CHEHARDY, Judge.
By this appeal Deedri Davis challenges the authority of the Juvenile Court for the Parish of Jefferson to maintain temporary custody of her minor son Robert in Mr. and Mrs. Richard Aple. The Aples were given temporary custody when the mother voluntarily relinquished custody because she was financially not able to take care of him.
Upon receiving a letter dated April 14, 1978 from appellant in which she said she was financially unable to care for her child, the juvenile court granted temporary custody to the Aples. Approximately four months later, Ms. Davis informed the court she wished to get her child back. She stated she was living in Florida with her mother and could provide adequate care, and inquired as to how she could regain custody. By response dated August 24, 1978 a juvenile court social worker informed the mother that the Jefferson Parish Department of Health and Human Resources would request a home study into her Florida environment. On September 7, 1978 Ms. Davis advised the Jefferson social worker how to reach her so that the investigation could be conducted.
No investigation was ever made in Florida; more than four months elapsed during which time the case was transferred from the Jefferson Parish office to the Orleans Parish division of the Health and Human Resources Department because the Aples lived in Orleans Parish. On January 30, 1979, the Jefferson office advised the Orleans office that Ms. Davis intended to bring a rule to revoke custody. The rule, originally set for February 22, 1979, was continued by consent until March 9, 1979.
Appellant testified she was now financially able to take care of her child and desired to have him returned. Although appellant was never formally charged with neglecting, abusing or abandoning her child, the juvenile court, over the objection of appellant’s' counsel, admitted evidence that would have been relevant had neglect, abuse or abandonment charges been before the court. His verbal findings of fact would support conclusions of neglect and abandonment.
The learned trial judge in his oral reasons for finding the child neglected observed: “I find that the child, I find beyond reasonable doubt, I don’t have to use that standard, but that’s the standard . . . was grossly neglected child at that time.”
In discussing the living conditions of the child at the time the mother consented, over the phone, for the Aples, whom she did not know, to take the child, the court noted:
“ * * * Nobody ever controverted that the apartment was deplorable, absolutely deplorable with vomit and the urine * *. The mother never controverted that. * * I don’t believe there was medicine available * * * the mother said in rebuttal that she fed the child, I can’t believe that. And find a child with a distended stomach weighing only ten pounds. A healthy child weighs pretty much that at birth. At six months? You should have doubled your weight just about. * * * [T]he mother, there’s great, great [inconsistencies in what she says, that she was tremendously unemployed at the time, she had to . yet, under cross-examination it turns out that she had been out of work for about two weeks at this time. Just about two weeks only. There was no electricity, lights coming in with an extension cord from someplace else, and yet, the grandmother who offers now to provide all kind of assistance, the maternal grandmother, she was living in the apartment at the same time. * * * The neighbor said that the child, that he really stank * * * a smell that came from the child, dressed in filthy rags, mildew on the sheet, the apartment stunk, bed full of urine, that’s what the neighbor said, not what Mrs. Aple said. *833 The mother did take off that night, she was supposed to be gone from 9 to 11, she was in fact gone the entire night when they were called. The mother testified that she had met Mrs. Aple, that’s just not so. I’m not prepared to say that Mrs. Aple just making up this story * * * it has the ring of truth. The mother’s testimony just does not have the ring of truth. There is inconsistencies in at least three different areas. * * * [A]nd this arrangement [giving up of the child in April of 1978] was done on the phone, now whether you say ‘I’m giving to you temporarily.’ Whether you say ‘I’m giving to you for adoption’, that’s not the important point. The important point is this was done with somebody over the phone, you never even met one time. * * The child is . child was defenseless * * * we find the child to be a child in need of care. This is the new terminology pursuant to ... a grossly, neglectful situation that existed then. * * * [N]ot one single bit has been proven to show that the situation has been changed. * * * Accordingly then, pursuant to new law, the child stays where it is * * * we find the child to be in need of care. The Aples are granted custody, pursuant to law, this matter will be set for further disposition in six months. * * * ”
The trial court held and appellee argues the jurisdiction conferred in this case was granted by L.R.S. 13:1570(C), which provides:
“To award the custody of a child domiciled within the parish or who is actually in the parish to an agency, institution or individual when the parent or other person having custody or care of the child wishes to relinquish custody or care for the purpose of enabling the child to receive adequate care and protection.”
When this matter was tried, the quoted section of the revised statutes had been superseded by C.J.P. art. 17(A)(2), which states substantially the same thing as the quoted section. Insofar as it relates to issues in this case, the new law is a restatement of the old.
C.J.P. art. 17(A)(2) applies only in a situation where the parent voluntarily acquiesces in temporary custody being vested in a nonparent and the jurisdiction conferred by this section continues only so long as the surrendering parent continues to consent to the juvenile court’s exercising discretion to award custody. In Dillon v. State, 336 So.2d 1066 (La.App. 2d Cir. 1976), the court held that a parent who voluntarily surrenders a child to the state need not prove her fitness to be a parent in order to reacquire custody. Dillon noted that irrevocable custody is given to the state only if the parents voluntarily surrender the child for adoption and signify their assent by authentic act or if the parents are adjudged to have neglected, abused or abandoned the child.
In this case the court continued the child in the custody of the Aples on a finding that he “ * * * was in need of care.” C.J.P. art. 15 gives the court exclusive jurisdiction to conduct a proceeding in which a child is alleged to be in need of supervision. C.J.P. art. 45 states any proceeding under Article 15 must be commenced by petition. Article 46 requires the petition to be filed at least 48 hours before any hearing to determine continued custody and further states that if no petition is filed the child should be released.
We share Judge Gothard’s concern for the child and recognize that the first obligation of this court is to make certain that the child receives the care he is in need of.
We therefore conclude that Ms. Davis could request the return of her child where she had voluntarily surrendered custody; that the juvenile judge was correct in his finding that the child is a child in need of care; that pursuant to C.J.P. art. 45 filing of a petition is a prerequisite to the finding that a child is a neglected child; that under paragraphs (6) and (7) of C.J.P. art. 40 the court could authorize continued custody prior to adjudication; and that C.J.P. art. 2 requires this code to be liberally construed to do what is best for the welfare of the child.
*834 Under the authority vested in this court by C.C.P. art. 2164 it is the judgment of this court that the custody of Robert Davis vested in Mr. and Mrs. Richard Aple be continued for three weeks from the signing of this judgment and that if proceedings are not taken within that time to satisfy the requirement of C.J.P. art. 45, the custody of the child Robert Davis vested in Mr. and Mrs. Richard Aple shall be rescinded and custody restored to Ms. Deedri Davis.
For the reasons assigned, the judgment appealed from is amended to limit the continued custody of Robert Davis in Mr. and Mrs. Richard Aple to only an additional three weeks after the decree of this court becomes final.

AMENDED AND RENDERED.