YELVERTON, Judge.
By this appeal Wanda Lynn Rogers challenges the authority of the Juvenile Court for the Parish of Iberia to maintain temporary custody of her minor son. The mother of the child earlier relinquished custody to the State for the purpose of enabling the child to receive adequate care and protection. In the instant proceedings, the mother is seeking to regain custody. The trial court, on July 27, 1982, granted the mother the eventual return of custody, but ordered that it be done in stages and under supervision. It is the failure of the trial court to return full immediate custody to the mother that forms the single assignment of error on appeal.
The question thus posed is this: where jurisdiction to award custody of a Juvenile Court is based upon the voluntary relinquishment of the child under the provisions of LSA-C.J.P. art. 17(A)(2), what authority does the Juvenile Court have to order a structured return of the child into parental care once the parent or parents have with *1285 drawn consent and demand the return of the child into their custody?
The ease comes before us with the following history: The child, Michael Boutte, Jr., presently four, was born January 1,1979, of the marriage between Wanda Rogers and her third husband, Michael Boutte, Sr. Before the child was three months old, Wanda’s third husband divorced her on the grounds of adultery and got custody of the child and Wanda married her fourth husband.
Wanda and her fourth husband separated after only two weeks of marriage. In May 1979 Wanda took the child and went to her family’s home in Mississippi. Mr. Boutte was able to get the return of the child. The baby was in need of medical attention and was taken to a doctor.
This led to action by the State. On July 27, 1979, the District Attorney for the Parish of Iberia filed a complaint initiating proceedings under LSA-R.S. 14:403. An instanter order was signed by the District Court granting temporary custody to the Louisiana Department of Health and Human Resources.
Both parents subsequently voluntarily relinquished custody of the child to the State. No further pleadings were filed by the State. On May 8,1980, a custody order was signed giving physical custody to the parental grandparents with the legal custody remaining in the State. On July 30,1980, the physical custody of the child was transferred to Mrs. Doris Delcambre, a paternal aunt, who had been certified by the State as a foster parent.
The mother married her fifth husband, Wilfred Rogers, in March 1981, and apparently established a stable home for the first time in her life. Subsequently she requested the Juvenile Court to return custody of her son Michael to her.
A hearing was held on July 27, 1982, to determine whether custody should be returned to the mother. On October 7, 1982, a judgment was rendered continuing the legal custody of the child in the State while implementing a procedure for the gradual return of custody to the mother.[1] It is from this judgment that the mother has appealed, complaining that the court was without authority to continue custody in the State, and that the Juvenile Court should have immediately granted custody to the mother.
We agree that under the procedural facts of this case the trial court erred in continuing the custody of the child in the State of Louisiana.
We reach this conclusion because we find that the jurisdiction of the Juvenile Court was based on C.J.P. art. 17(A)(2) which reads as follows:
A. A court exercising juvenile jurisdiction shall have exclusive original jurisdiction, in conformity with any special rules prescribed by law, in the following cases:
* * * * * *
(2) Proceedings to award custody of a child domiciled within the parish or who is actually in the parish to an agency, institution or individual, when the parent wishes to relinquish custody or care for the purpose of enabling the child to receive adequate care and protection.
Jurisdiction under the above quoted article continues in the State only so long as the consenting parents continue to consent to the Juvenile Court’s exercising discretion to award custody. Once that consent is withdrawn, the State must yield custody of the child to the parent demanding its return. The only way that the State can retain custody is by utilization of the pro *1286 ceedings available to it to acquire irrevocable custody under LSA-C.J.P. art. 45.
Certain provisions of the Code of Juvenile Procedure as interpreted by the jurisprudence reveal the reasons for these conclusions. Under the relatively new provisions of the Code of Juvenile Procedure, juvenile jurisdiction over children exists only in cases provided for by C.J.P. arts. 15 and 17. Article 15 grants jurisdiction in proceedings in which the child is alleged to be either delinquent, or in need of supervision, or in need of care. Additional provisions for jurisdiction over abused children is recognized by this article to include proceedings under R.S. 14:403. Where jurisdiction is exercised under Article 15, proceedings must be instituted pursuant to Article 45, leading to an adjudication hearing and, if the child is adjudicated delinquent, in need of supervision or in need of care, the State acquires custody which it may exercise in a variety of ways at a disposition hearing.
The exercise of jurisdiction pursuant to C.J.P. art. 15 (and by reference, R.S. 14:403) is the only means whereby the State on its own initiative can acquire custody of a child which does not depend upon the consent of the parents. Dillon v. State, 336 So.2d 1066 (La.App. 2nd Cir.1976).
Juvenile Court jurisdiction to award custody based on the provisions of C.J.P. art. 17(A)(2), supra, depends entirely on the continuing consent of the relinquishing parent or parents. Dillon v. State, supra; State in the Interest of Davis, 379 So.2d 831 (La. App. 4th Cir.1980). The latter case contains the following language:
[1] C.J.P. art. 17(A)(2) applies only in a situation where the parent voluntarily acquiesces in temporary custody being vested in a nonparent and the jurisdiction conferred by this section continues only so long as the surrendering parent continues to consent to the juvenile court’s exercising discretion to award custody. In Dillon v. State, 336 So.2d 1066 (La.App. 2d Cir.1976), the court held that a parent who voluntarily surrenders a child to the state need not prove her fitness to be a parent in order to reacquire custody. Dillon noted that irrevocable custody is given to the state only if the parents voluntarily surrender the child for adoption and signify their assent by authentic act or if the parents are adjudged to have neglected, abused or abandoned the child.
In the instant case, the Juvenile Court apparently considered that its jurisdiction was based upon C.J.P. art. 15 under the mistaken belief that earlier proceedings had resulted in an adjudication that the child was in need of care. For this reason, the court conducted the hearing of July 27, 1981, as though it were an inquiry into the fitness of the mother to regain custody. The court heard and considered testimony that the mother had on two occasions committed adultery with her third husband while she was married to her fifth husband. Also, the court must have considered the wishes of the father of the child, Michael Boutte, Sr., who testified that, although he himself did not want custody, he preferred that custody of his child continue in the paternal aunt rather than be restored to the mother. The court also considered testimony of witnesses for the Department of Health and Human Resources that the mother appeared to have stabilized her life and that she was able to care for the child. The court then fashioned the judgment appealed from, which as stated earlier, left the custody of the child in the State but provided for a structured and supervised return of the child over a period of many months into the custody of the mother.
We think that the Juvenile Court was in error in failing to immediately return the child to the mother. The record reveals that except for the initial filing of a complaint under R.S. 14:403, no pleadings have ever been filed by the State. The State has never filed a petition pursuant to C.J.P. art. 45 looking to an adjudication of this child as a child in need of care; hence, there has been no adjudication and the State does not hold custody under the exercise of the Juvenile Court’s jurisdiction under C.J.P. art. 15. The proceeding originally instituted as a complaint under R.S. 14:403 was converted *1287 into the exercise of jurisdiction under C.J.P. art. 17(A)(2), and that remained the situation when the hearing was conducted on July 27,1980. The State might have filed a petition under C.J.P. art. 45 before the hearing of July 27,1981, or during or immediately after the hearing, but it did not do so. Under these circumstances we conclude that the juvenile court was powerless to withhold custody from the mother and should have restored custody to her on July 27, 1981.
For the reasons assigned, we reverse the judgment of the juvenile court for the Parish of Iberia and render judgment in favor of Wanda Lynn Rogers, and against the State Department of Health and Human Resources, ordering that custody of the minor, James Michael Boutte, be restored to Wanda Rogers forthwith.
REVERSED AND RENDERED.

. The judgment ordered a scheduled visitation program of six months to be followed by another six months of trial custody. The mother was allowed physical custody of the child for a two week period every six weeks for a six month period. At the end of this scheduled visitation the mother would obtain actual custody of the child without the need for a further hearing unless the State intervened. The judgment also placed several conditions upon this return of custody. The judgment provided for visitation rights with the Bouttes and for Mrs. Rogers to submit to psychological examination and treatment. The trial court retained the right to review the legal custody issue after six months of actual custody with Mrs. Rogers.