**Karen Kelly AUSTIN, Individually and as Natural Tutrix of Minors, Renee Chevelle Henry and Raenell Lynn Henry, Plaintiff-Appellant,**

v.

**Ronald BOREL and Janenne Trahan, Defendants-Appellees.**

No. 86–4762.

United States Court of Appeals,
Fifth Circuit.

Nov. 4, 1987.

Rehearing and Rehearing En Banc
Denied Dec. 21, 1987.

Cecilia A. Bonin, St. Martinville, La., for plaintiff-appellant.

Wm. Guste, Jr., Atty. Gen., T. Michael Landrum, Asst. Atty. Gen., Baton Rouge, La., for defendants-appellees.

Before BROWN, JOHNSON, and HILL,* Circuit Judges.

JOHNSON, Circuit Judge:

This appeal requires us to determine whether Louisiana child protection workers are entitled to absolute rather than quali-

* Judge Hill concurred in the above opinion before his death on October 19, 1987.

fied immunity for their conduct in filing an allegedly false verified complaint seeking the removal of two children from the custody of their parents. Given the function of a verified complaint under Louisiana law, we conclude that such workers are entitled to only qualified immunity from a 42 U.S.C. § 1983 suit for damages.

## I.

The defendants in this case, Ronald Borel and Janenne Trahan, are child protection welfare workers with the Louisiana Children's Protective Service. Louisiana law requires child protection workers to investigate reports of child abuse and neglect.[1] If their investigation reveals evidence of either abuse or neglect, the workers must report their findings to the local parish district attorney as soon as possible.[2] Child protection workers may also file a written verified complaint [3] "showing reasonable grounds to believe that the child is abused, neglected or in need of care and that the immediate removal of the child is necessary for his protection from further abuse or neglect." [4]

The complaint is filed with the local parish juvenile court,[5] which may then issue an order requiring law enforcement officials to take the child into custody.[6] Once a child is taken into state custody, the juvenile court must conduct a hearing within seventy-two hours to determine whether the child shall remain in official custody pending full adjudication, or be released to the care of his parents.[7] At the hearing, the state must establish reasonable grounds to believe that the child is abused or neglected.[8] If the juvenile court determines that the child should remain in state custody, child protection workers must submit a complete written report of investigation to the local district attorney.[9] The district attorney may then, within thirty days, file a petition to have the child adjudicated within need of care.[10] Once a petition is filed, the juvenile court will set the matter for adjudication within forty-five days of the date of filing.[11]

In the instant case, Karen Austin received information from her ten-year-old daughter, Renee, indicating that Renee's stepfather, Larry Austin, was sexually abusing the child. Renee was living at that time with her mother (Karen Austin), her stepfather (Larry Austin), her six-year-old sister Raenell, and her one-year-old sister Stacie. Karen Austin immediately took Renee to a hospital for medical attention and notified both the local police department and the district attorney's office. They in turn notified the Crisis Intervention Unit of the Louisiana Children's Protective Service. The case was assigned to Ronald Borel, a child protection caseworker under the supervision of Janenne Trahan.

Borel contacted the Austin family and proceeded to investigate Karen Austin's complaint. After completing a preliminary investigation, Borel reported his findings to the local district attorney's office. Acting on information provided by Borel, the dis-

1. La.Rev.Stat.Ann. §§ 14:403(G)(1) & (3) (West 1986).

2. La.Rev.Stat.Ann. § 14:403(G)(3) (West 1986).

3. "A verified complaint is a written statement of facts sworn to before an officer authorized by law to administer oaths showing there are reasonable grounds to believe that the child should be taken into custody pursuant to Article 25." La.Code Juv.Proc.Ann. art. 26 (West 1987).

4. La.Rev.Stat.Ann. § 14:403(G)(6) (West 1986).

5. *See In re Boudreaux,* 427 So.2d 891 (La.App. 1983) (proceedings for termination of parental rights are to be brought in juvenile court); *In re Purcell,* 337 So.2d 637 (La.App.1976) ("the law grants to juvenile courts exclusive jurisdiction in proceedings concerning any child, domiciled in or found within the parish, who has been determined to be abused or neglected under LSA–R.S. 14:403.").

6. La.Rev.Stat.Ann. § 14:403(G)(6) (West 1986).

7. La.Rev.Stat.Ann. § 14:403(G)(7) (West 1986); La.Code Juv.Proc.Ann. art. 38 (West 1987).

8. La.Code Juv.Proc.Ann. arts. 39–40 (West 1987).

9. La.Rev.Stat.Ann. § 14:403(G)(8) (West 1986).

10. La.Rev.Stat.Ann. § 14:403(G)(10) (West 1986).

11. La.Rev.Stat.Ann. § 14:403(G)(11) (West 1986).

trict attorney's office filed a petition on January 11, 1984, seeking the immediate removal of Renee and her sister Raenell from their parents' custody. In support of the State's petition, Borel executed and filed a verified complaint reporting the results of his investigation, stating that Renee and Raenell were in danger of sexual abuse "due to the family's unwillingness to cooperate with the agency investigation of the complaint," and concluding that there was good cause to remove the children from their parents' custody. The juvenile court entered an order that same day placing the two children in the temporary custody of the State of Louisiana and ordering that a continuing custody hearing be held two days later, on January 13, 1984. At the conclusion of the January 13 hearing, the juvenile court ordered that custody of the children remain with the State pending further investigation. Following a formal adjudication three weeks later, the juvenile court ordered the State to return the children to their mother's custody.

Karen Austin then filed this action for damages pursuant to 42 U.S.C. § 1983 against the State of Louisiana and against Borel and Trahan, individually and in their official capacities as child protection welfare workers. Austin's complaint alleged that Borel, with Trahan's knowledge and assistance, knowingly made false statements in his verified complaint resulting in the wrongful taking of her two daughters. In response to a motion by the State, the district court entered an order dismissing the complaint against the State on the ground of eleventh amendment sovereign immunity. For the same reason, the court dismissed the complaint against Borel and Trahan for conduct committed in their official capacities. In response to a second motion, the district court concluded that Borel and Trahan, individually, were entitled to absolute immunity and entered a final judgment dismissing the action. Karen Austin appeals only from this latter ruling.

## II.

State officials performing discretionary functions are entitled to some form of immunity from section 1983 actions for damages.[12] Official immunity serves as a shield to protect such officials from undue interference with their duties and from potentially disabling threats of liability.[13] Official immunity may be either absolute or qualified, depending on the functions performed by the particular official at issue. Qualified immunity shields only that conduct not violative of clearly established constitutional rights of which a reasonable person would have known.[14] Absolute immunity, in contrast, precludes any action for damages, so long as the challenged conduct falls within the scope of the immunity. The sole issue presented by this appeal is whether the district court properly determined that Borel and Trahan were entitled to absolute rather than qualified immunity for their conduct in filing an allegedly false verified complaint seeking the removal of two children from the custody of their parents.

Executive officials are generally entitled to qualified rather than absolute immunity.[15] This general rule of qualified immunity encompasses, for example, gov-

---

12. *Kaplan v. Clear Lake City Water Authority,* 794 F.2d 1059, 1066 (5th Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982)).

13. *Harlow v. Fitzgerald,* 457 U.S. at 807, 102 S.Ct. at 2732; *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 2906, 57 L.Ed.2d 895 (1978) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 240–41, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974)).

14. *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald,* 457 U.S. at 819, 102 S.Ct. at 2738.

15. *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) ("Our cases also make plain that '[f]or executive officers in general, ... qualified immunity represents the norm.'") (quoting *Harlow v. Fitzgerald,* 457 U.S. at 807, 102 S.Ct. at 2732); *see also Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985); *but see Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (holding that the President of the United States is entitled to absolute immunity).

ernors,[16] senior aides and advisors to chief executives,[17] prison officials,[18] and police officers.[19] These executive officials were not accorded an absolute immunity at common law and the Supreme Court has declined to interpret section 1983 as expanding the scope of immunity otherwise available.[20] "A considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it"[21] has, however, resulted in a rule of absolute immunity for legislative[22] and judicial officers[23] when acting within the scope of their respective functions.

Absolute immunity has also extended to certain executive officials who perform functions closely associated with the judicial process. Prosecuting attorneys, for example, are entitled to absolute immunity for their conduct in initiating a prosecution and in prosecuting the State's case.[24] Witnesses, including police officers, who testify in judicial proceedings are also shielded by absolute immunity.[25] Because both prosecutors and witnesses were entitled to immunity at common law, extending this immunity to section 1983 actions required

determining that the considerations of public policy supporting the common law rule likewise countenance absolute immunity under section 1983.

In the case of prosecutors, their role in our system of justice is likely to provoke "with some frequency" retaliatory suits by angry defendants. Such suits, if permitted to proceed, might well have an adverse effect on the criminal justice system, not only by affecting the prosecutor's conduct of the trial, but also by discouraging otherwise justified prosecutions.[26] At the same time, the safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct. Prosecutors "are restrained not only by their professional obligations, but by the knowledge that their assertions will be contested by their adversaries in open court."[27] These considerations have dictated the same immunity under section 1983 that prosecutors enjoy at common law.

■ Because a functional approach governs the law of immunity, it is the prosecu-

16. *See Scheuer v. Rhodes,* 416 U.S. at 248, 94 S.Ct. at 1692 (governor and his aides entitled to qualified, but not absolute, immunity).

17. *See Harlow v. Fitzgerald,* 457 U.S. at 810, 102 S.Ct. at 2733 ("Having decided in *Butz* that Members of the Cabinet ordinarily enjoy only qualified immunity from suit, we conclude today that it would be equally untenable to hold absolute immunity an incident of the office of every Presidential subordinate based in the White House.").

18. *See Cleavinger v. Saxner,* 474 U.S. at 205, 106 S.Ct. at 503 (members of federal prison discipline committee entitled to qualified, but not absolute, immunity); *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (state prison administrators entitled only to qualified immunity).

19. *See Malley v. Briggs,* 475 U.S. at 343, 106 S.Ct. at 1097; *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967).

20. Section 1983 provides that "[e]very person" who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages. On its face, the statute thus appears to admit no immunities. Nonetheless, the Supreme Court has read § 1983 in harmony with general principles of tort immunities and defenses rather

than in derogation of them. *See, e.g., Tower v. Glover,* 467 U.S. 914, 921, 104 S.Ct. 2820, 2824, 81 L.Ed.2d 758 (1984).

21. *Butz v. Economou,* 438 U.S. at 509, 98 S.Ct. at 2912 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 421, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976)).

22. *See, e.g., Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975); *Tenny v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

23. *See, e.g., Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

24. *See Imbler v. Pachtman,* 424 U.S. at 424–26, 96 S.Ct. at 992–93; *Yaselli v. Goff,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), *aff'g,* 12 F.2d 396 (2d Cir.1926).

25. *See Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983).

26. *Imbler v. Pachtman,* 424 U.S. at 425–26, 96 S.Ct. at 992–93.

27. *Butz v. Economou,* 438 U.S. at 511–13, 98 S.Ct. at 2913–14.

torial function, not the office or title, that requires absolute immunity.[28] Other public officials whose duties are "functionally comparable" to those of a prosecutor may also be entitled to absolute immunity. The Supreme Court has, for example, accorded absolute immunity from suits arising out of "[t]he decision to initiate administrative proceedings" and "the presentation of evidence on the record in the course of an adjudication."[29] Similarly, this Court has accorded absolute immunity in an action challenging a decision to initiate administrative proceedings to impose professional disciplinary sanctions.[30]

## III.

■ Relying on an analogy between prosecutors and child welfare workers, several circuits have concluded that such workers are entitled to absolute immunity from suits arising out of their decision to initiate child abuse, neglect or delinquency proceedings. In *Meyers v. Contra Costa County,*[31] the Ninth Circuit recently held that child services workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings.[32] The Sixth Circuit has also held, in *Kurzawa v. Mueller,*[33] that state employees responsible for prosecuting child neglect and delinquency petitions are entitled to absolute immunity. In reaching this decision, the Sixth Circuit noted that, like prosecutors, these workers "must be able to make a decision to move forward and be free from intimidation and harrassment."[34] Finally, in *Malachowski v. City of Keene,*[35] the First Circuit held that a juvenile officer was entitled to absolute immunity under section 1983 for filing an allegedly false delinquency petition. According to the First Circuit, filing such a petition was analogous to initiating a criminal prosecution and was an activity "intimately associated with the judicial phase of the criminal process ... to which the reasons for absolute immunity apply with full force."[36]

In each of these three cases, the immune conduct was the initiation of judicial proceedings. Under Louisiana law, child abuse proceedings are initiated by the filing of a "petition."[37] The petition is a formal request that the juvenile court adjudicate the child to be in need of care,[38] filed

---

**28.** *Id.*

**29.** *See, id.* at 517–18, 98 S.Ct. at 2916; *see also Stankevitz v. IRS,* 640 F.2d 205 (9th Cir.1981).

**30.** *See Austin Municipal Securities, Inc. v. National Association of Securities Dealers, Inc.,* 757 F.2d 676, 689 (5th Cir.1985); *see also Kwoun v. Southeast Missouri Prof. Standards,* 811 F.2d 401 (8th Cir.1987).

**31.** 812 F.2d 1154 (9th Cir.1987).

**32.** *Id.* at 1157. Among the duties of the workers involved in *Meyers* "were the initiation and pursuit of dependency petitions in cases of suspected child neglect and abuse." *Id.* at 1156.

**33.** 732 F.2d 1456 (6th Cir.1984).

**34.** *Id.* at 1458.

**35.** 787 F.2d 704 (1st Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986).

**36.** *Id.* at 712 (quoting *Imbler v. Pachtman,* 424 U.S. at 430, 96 S.Ct. at 995). *See also Mazor v. Shelton,* 637 F.Supp. 330 (N.D.Calif.1986) (child protection worker much like a prosecutor and was entitled to absolute immunity); *Hennessey v. Washington,* 627 F.Supp. 137 (E.D.Wash.1985) (child protective service caseworkers are abso-

lutely immune from civil rights liability); *Pepper v. Alexander,* 599 F.Supp. 523 (D.N.M.1984) (granting absolute immunity to child protection workers); *Whelehan v. County of Monroe,* 558 F.Supp. 1093 (W.D.N.Y.1983) (child-protective duties analogous to those of prosecutor).

**37.** La.Code Juv.Proc.Ann. art. 45 (West 1987) ("A proceeding under Article 15 shall be commenced by petition.") *In re Davis,* 379 So.2d 831, 833 (La.App.1980) ("C.J.P. art. 15 gives the court exclusive jurisdiction to conduct a proceeding in which a child is alleged to be in need of supervision. C.J.P. art. 45 states any proceeding under Article 15 must be commenced by petition."); *In re Alexander,* 372 So.2d 1243, 1246 & n. 4 (La.App.1979) (abuse proceeding initiated by petition either with or without instanter order).

**38.** *See* La.Code Juv.Proc.Ann. art. 49 (West 1987). A child is in need of care "[w]hose parent inflicts, attempts to inflict, or, as a result of inadequate supervision, allows the infliction or attempted infliction of physical injury or sexual abuse upon the child which seriously endangers the physical, mental, or emotional health of the child; ..." La.Code Juv.Proc.Ann. art. 13(14)(a) (West 1987).

by the local district attorney without leave of court or by any other person when so authorized by the court.[39] If no petition is filed within thirty days of a preliminary custody hearing, "the child shall be released."[40] In the instant case, the record reveals that the petition was filed by an assistant district attorney for the Parish of Iberia.[41]

Austin's section 1983 action does not, however, challenge the parish district attorney's decision to file a petition. Instead she seeks to recover for an allegedly false verified complaint filed by Ronald Borel. Under the Louisiana Code of Juvenile Procedure, a verified complaint serves a function wholly distinct and different from that of a petition. A verified complaint is a sworn statement of fact by "a peace officer, probation officer, district attorney, or other person designated by the court"[42] indicating the existence of reasonable grounds to believe a child should be taken into custody.[43] Upon presentation of a verified complaint, the juvenile court may issue an instanter order directing the child's removal from its parents' custody.[44] Issuance of an instanter order upon the filing of a verified complaint initiates custody, but only filing the petition itself initiates the adjudication process.

Complaining witnesses were not absolutely immune at common law. "In 1871, the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause."[45] Relying on this common law rule, the Supreme Court recently held that a police officer who seeks an arrest warrant by submitting a complaint and supporting affidavit to a judge is not entitled to absolute immunity.[46] The Court reasoned that its role was to interpret the intent of Congress in enacting section 1983, not to make a free-wheeling policy choice, and that its interpretation of Congressional intent must be guided by the common law tradition. Since section 1983 on its face does not provide for any immunities, the Court refused to read into the statute "an absolute immunity for conduct which was only accorded qualified immunity in 1871."[47] The Court also noted that even were it to ignore the common law tradition, the proposed analogy between a police officer seeking a warrant and a prosecutor seeking an indictment was untenable:

We intend no disrespect to the officer applying for a warrant by observing that his action, while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment. Furthermore, petitioner's analogy, while it has some force, does not take account of the fact that the prosecutor's act in seeking an indictment is but the first step in the process of seeking a conviction. Exposing the prosecutor to liability for the initial phase of his prosecutorial work could interfere with his exercise of independent judgment at every phase of his work, since the prosecutor might come to see later decisions in terms of their effect on his potential liability. Thus, we shield the prosecutor seeking an indict-

**39.** See La.Code Juv.Proc.Ann. art. 45 (West 1987).

**40.** See La.Code Juv.Proc.Ann. art. 46 (West 1987).

**41.** At least two circuits have concluded that prosecuting attorneys are entitled to absolute immunity for their decision to initiate and prosecute child protection proceedings. See *Myers v. Morris*, 810 F.2d 1437 (8th Cir.1987); *Walden v. Wishengrad*, 745 F.2d 149 (2d Cir.1984).

**42.** La.Code Juv.Proc.Ann. art. 25 (West 1987).

**43.** La.Code Juv.Proc.Ann. art. 26 (West 1987).

**44.** La.Code Juv.Proc.Ann. art. 25 (West 1987).

**45.** *Malley v. Briggs*, 475 U.S. at 341, 106 S.Ct. at 1096 (citing *Dinsman v. Wilkes*, 53 U.S. (12 How.) 390, 402, 13 L.Ed. 1036 (1852); *Randall v. Henry*, 5 Stew. & P. 367, 378 (Ala.1834); *Bell v. Keepers*, 37 Kan. 64, 14 P. 542 (1887); *Finn v. Frink*, 84 Me. 261, 24 A. 851 (1892); 4 W. Wait, Actions and Defenses 352–56 (1878)).

**46.** *Malley v. Briggs*, 475 U.S. at 343–44, 106 S.Ct. at 1097–98 (1986).

**47.** *Id.* 342, 106 S.Ct. at 1097.

ment because any lesser immunity could impair the performance of a central actor in the judicial process.[48]

This Circuit and the Eighth Circuit have held, for similar reasons, that probation officers who mistakenly cause the arrest and incarceration of a person on probation are entitled to qualified, but not absolute, immunity.[49] In filing a report seeking a parole violator's warrant, a parole officer performs a function closely analogous to that of a police officer filing an affidavit seeking a warrant to arrest. Since the parole officer's actions in this regard are functionally comparable to those of a police officer, he is only entitled to qualified immunity.[50]

The analogy between a police or parole officer filing a probable cause affidavit and a Louisiana child abuse worker filing a verified complaint is compelling. Like a police or parole officer seeking a warrant to arrest, the Louisiana child abuse workers in the instant case filed a probable cause affidavit seeking to procure temporary custody of an individual pending a

formal adjudication. In both instances, the formal adjudication to follow is initiated only if some independent additional action is taken. A criminal prosecution, for example, is initiated only if the prosecutor chooses to seek an indictment or information. Similarly, a Louisiana need of care proceeding is initiated only if the prosecutor, in this case an assistant district attorney, chooses to file a petition seeking an adjudication. The verified complaint, while in many cases a vital part of child abuse procedures,[51] is thus further removed from the judicial phase of the proceeding than the district attorney's act in filing a petition. For these reasons, filing a verified complaint under the Louisiana Code of Juvenile Procedure is not a prosecutorial function, but instead is functionally comparable to a police officer seeking an arrest warrant.[52] We note that Louisiana law authorizes police officers, as well as child abuse workers, to file verified complaints.[53] A police officer would clearly not be entitled to absolute immunity in filing such a complaint.[54] The functional approach to

48. *Id.* Section 1983 does not allow recovery of damages against a state official for testimony in a judicial proceeding. *See Briscoe v. LaHue,* 460 U.S. at 330, 103 S.Ct. at 1112. In *Malley* the Court also held that an officer applying for an arrest warrant is not entitled to absolute immunity as a witness. 475 U.S. at 340, 106 S.Ct. at 1096. Officers who submit such affidavits are not subject to procedural safeguards such as cross-examination that are present in adversary judicial proceedings and are thus not entitled to absolute immunity under *Briscoe. See, e.g., Krohn v. United States,* 742 F.2d 24, 31 (1st Cir.1984). For the same reasons, the defendants in the instant case are not entitled to absolute witness immunity.

49. *See, e.g., Griffin v. Leonard,* 821 F.2d 1124 (5th Cir. 1987) (citing *Galvan v. Garmon,* 710 F.2d 214 (5th Cir.1983), *cert. denied,* 466 U.S. 949, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984)); *Nelson v. Balazic,* 802 F.2d 1077 (8th Cir.1986); *Ray v. Pickett,* 734 F.2d 370, 374 (8th Cir.1984).

50. *See Nelson v. Balazic,* 802 F.2d at 1079.

51. A verified complaint is by no means a prerequisite to the initiation of child abuse proceedings. A child abuse proceeding may be instituted either with or without an instanter order. *See In re Alexander,* 372 So.2d 1243, 1246 n. 4 (La.App.1979).

52. *See also Czikalla v. Malloy,* 649 F.Supp. 1212 (D.Colo.1986) (actions of child abuse workers

more like those of a police officer than those of a prosecutor); *Buchanan v. Ford,* 638 F.Supp. 168 (N.D.N.Y.1986) (child protection worker entitled to qualified immunity); *Doe v. County of Suffolk,* 494 F.Supp. 179 (E.D.N.Y.1980) (child protection worker like a police officer).

The procedural safeguards applicable to issuance of arrest warrants and instanter orders are similar. In both cases, a probable cause affidavit must be submitted to a judicial officer, who in turn is responsible for issuing the warrant or order. Following an arrest, the accused will generally be brought before a judicial officer without unnecessary delay. *See generally* Fed.R.Crim.P. 5; W. LaFave, Criminal Procedure § 1.4(h) at 13 (West 1985). Following execution of an instanter order, a preliminary hearing must be held within seventy-two hours. Neither police officers nor child abuse caseworkers, however, are restricted by the sort of well-developed and pervasive professional disciplinary standards applicable to prosecutors. *See Malley v. Briggs,* 475 U.S. at 343 n. 5, 106 S.Ct. at 1097 n. 5.

53. *See* La.Code Juv.Proc.Ann. art. 25 (West 1987).

54. *See Malley v. Briggs,* 475 U.S. at 340–45, 106 S.Ct. at 1096–98.

immunity requires that officials performing identical functions be treated alike.

We are certainly sensitive to the delicate, potentially explosive circumstances surrounding the duties of Louisiana child protection workers. "The outrage and frustration that arises when the state intervenes in matters of family intimacy is obvious." [55] It is not, however, the proper role of this Court to make policy choices in determining the degree of immunity due a particular official.[56] "We do not have a license to establish immunities from § 1983 actions in the interests of what we judge to be sound public policy. It is for Congress to determine whether § 1983 litigation has become too burdensome to state or federal institutions and, if so, what remedial action is appropriate." [57]

### IV.

We conclude that the Louisiana child protection workers in this case are not entitled to absolute immunity for their conduct in filing an allegedly false verified complaint seeking the removal of two children from the home of Karen Austin. Our conclusion does not, however, necessarily mean these workers must go through the expense of discovery and trial. "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." [58] Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendants are entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.[59] In

remanding this case to the district court for further proceedings, we express no opinion regarding defendants' right to dismissal on the ground of qualified immunity.

REVERSED and REMANDED.

---

**55.** *Hennessey v. Washington,* 627 F.Supp. 137, 140 (E.D.Wash.1985).

**56.** *Malley v. Briggs,* 475 U.S. at 342, 106 S.Ct. at 1097.

**57.** *Tower v. Glover,* 467 U.S. at 923–24, 104 S.Ct. at 2826.

**58.** *Malley v. Briggs,* 475 U.S. at 341, 106 S.Ct. at 1096.

**59.** *Mitchell v. Forsyth,* 472 U.S. at 526, 105 S.Ct. at 2816.