793 So.2d 20 (2001)
Julie JOHNSON, individually, and Robin Johnson, Nicole Johnson, and Zachary Cleek, minors, by and through Julie Johnson, their next friend, mother, and natural guardian, Appellants,
v.
Nancy SACKETT, Department of Health and Rehabilitative Services (n/k/a Department of Children and Families) City of St. Petersburg, and L.A. Clemento, Appellees.
No. 2D99-2514.
District Court of Appeal of Florida, Second District.
March 28, 2001.
*21 David J. Plante of Merkle & Magri, P.A., Tampa, for Appellants.
Bruce A. Walkley of Walkley & Walkley, Tampa, for Appellee Nancy Sackett.
*22 No appearance for Appellees Department of Children and Families, City of St. Petersburg, and L.A. Clemento.
ALTENBERND, Acting Chief Judge.
Julie Johnson, individually and as the mother and guardian of her three minor children, appeals a summary judgment entered in favor of Nancy Sackett, an employee of the Department of Health and Rehabilitative Services, now known as the Department of Children and Families (the Department). We affirm in part and reverse in part.
This case arises out of events culminating in January 1989, when Ms. Sackett and Officer L.A. Clemento, an employee of the City of St. Petersburg, forcibly took custody of Ms. Johnson's three children during a pending dependency proceeding. The events leading up to this incident, however, began in early 1988, when Ms. Johnson's former husband had custody of their two children pursuant to a divorce decree. Ms. Johnson was pregnant with a third child and living at Alpha House. Then, in September 1988, the former husband was arrested for a serious felony. As a result, the Department initiated a dependency proceeding for the two older children. Ms. Johnson's third child was born November 8, 1988.
After an initial hearing in the dependency proceeding on December 27, 1988, the trial court orally approved the placement of the two older children with the maternal grandmother. Ms. Johnson was allowed some contact with the children. Thereafter, an investigation conducted by Ms. Sackett caused her to believe that the grandmother was not adequately supervising the children and was allowing Ms. Johnson more contact with the children than the circuit court's oral order had authorized. After discussing the matter with the Department's counsel, Ms. Sackett decided to place the two older children in protective custody. See § 39.401(c), Fla. Stat. (1987).
Ms. Johnson had custody of the children when Ms. Sackett located them. Ms. Sackett arranged for the police to assist in the change of custody. Ms. Johnson protested the pick-up, and was ultimately arrested by Officer Clemento. At that point, Ms. Sackett also took protective custody of Ms. Johnson's infant child, Zachary. Although Ms. Sackett testified in deposition that the initial rationale for taking protective custody of the infant was the mother's arrest, the child was not returned to Ms. Johnson when she was released from jail the next day. Instead, five days later, and after a child protective team staffing, Ms. Sackett, on behalf of the Department, filed a dependency proceeding for Zachary, alleging as its grounds that Ms. Johnson was "carrying the child in an unsafe manner, putting said child at risk."
Ten days after the children were taken into custody, a trial judge reviewed the case and ordered the Department to return all of the children to Ms. Johnson. Eventually, the Department dismissed the cases involving these children and the State decided not to pursue the criminal charges against Ms. Johnson for her actions at the time of the pick-up.
As a result of these events, Ms. Johnson filed suit in 1993 against the two employees, Ms. Sackett and Mr. Clemento, and the two governmental entities, the Department of Health and Rehabilitative Services, now known as the Department of Children and Families, and the City of St. Petersburg, for herself and on behalf of her three children. Her second amended complaint contained six separate theories in six separate counts. The theories included: (1) deprivation of constitutional rights under 42 U.S.C. § 1983; (2) false arrest; (3) assault and battery; (4) intentional *23 infliction of emotional distress; (5) negligence; and (6) malicious prosecution. Among the three children and Ms. Johnson, the pleading attempts to allege more than eighty separate causes of action. Initially, the trial court dismissed the entire lawsuit on a motion to dismiss. This court affirmed the trial court in part and reversed in part. Johnson v. State Dep't of Health & Rehab. Servs., 695 So.2d 927 (Fla. 2d DCA 1997). Following the last appeal, one or more claims remained pending against Ms. Sackett by one or more of the plaintiffs under each theory.
On this occasion, we review an order that granted summary judgment in favor of Ms. Sackett on all remaining claims. The claims against Officer Clemento, the City, and the Department remained pending in the trial court at the time this appeal was filed. It is worth emphasizing that the claims against Ms. Sackett and those against the Department tend to be mutually exclusive in light of the law of sovereign immunity. See §§ 768.28(1), (9), Fla. Stat. (1987). Thus, the judgment in her favor does not determine the potential liability of the Department.
We cannot affirm the trial court's order in its entirety. Although discovery has put to rest many of the claims against Ms. Sackett, we conclude that this record does not resolve beyond a question of fact the claim for malicious prosecution arising out of the filing of the dependency petition naming the infant child, Zachary.
Although the discovery in this case contains some factual disputes, there is a substantial core of undisputed facts. In light of those undisputed facts, we conclude that Ms. Sackett is entitled to immunity from all claims regarding her decision to initially take the three children into protective custody. There is no evidence that Ms. Sackett acted in this regard with the type of bad faith or malice that shifts liability for the actions of government employees from the state agency to the individual employee. See Hutchinson v. Miller, 548 So.2d 883 (Fla. 5th DCA 1989). Ms. Sackett made her decision to take the older children into protective custody during the pendency of a lawful dependency proceeding after counsel for the Department advised her that this action was appropriate. Additionally, she made this decision in the scope of her employment with the Department. Ms. Johnson's arrest necessitated the decision to shelter the youngest child, who was not a subject of the dependency proceeding. Thus, Ms. Sackett is entitled to qualified immunity for the § 1983 claims arising out of her conduct in this respect. See Gentile v. Bauder, 718 So.2d 781 (Fla.1998). Likewise, she is accorded immunity for the state tort claims involving these actions. See § 768.28, Fla. Stat. (1987).
On the other hand, Ms. Johnson claims that Ms. Sackett thereafter maliciously and without a lawful basis made the decision to file a dependency proceeding naming Zachary, the infant. There are conflicting facts concerning this aspect of Ms. Sackett's conduct. This action forms the basis for Ms. Johnson's claims, individually and on behalf of Zachary, for malicious prosecution and for civil rights violations.
Ms. Sackett maintains she is entitled to absolute immunity for her decision to file the dependency action involving Zachary. In the context of § 1983 claims, the United States Supreme Court has afforded prosecutors absolute immunity for their actions in initiating or litigating a criminal charge. Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Thereafter, the Supreme Court extended this protection to persons performing adjudicatory or "quasi-judicial" functions within federal agencies. Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 *24 L.Ed.2d 895 (1978). In Imbler and Butz, the Supreme Court analyzed the role of the official involved and whether policy considerations supported a grant of absolute immunity to that official for that role. Applying this functional analysis, most federal courts have concluded that caseworkers like Ms. Sackett enjoy absolute immunity from § 1983 claims in regard to their roles in filing and pursuing dependency petitions because these roles are "quasi-judicial" like the role of a prosecutor. See Ernst v. Child & Youth Servs. of Chester County, 108 F.3d 486 (3d Cir.1997); Vosburg v. Dep't of Soc. Servs., 884 F.2d 133 (4th Cir.1989); Salyer v. Patrick, 874 F.2d 374 (6th Cir.1989); Millspaugh v. County Dep't of Pub. Welfare of Wabash Cty., 937 F.2d 1172 (7th Cir.1991); Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs., 237 F.3d 1101 (9th Cir.2001). Cf. Spielman v. Hildebrand, 873 F.2d 1377 (10th Cir.1989) (recognizing that social workers may enjoy absolute immunity when their actions have requisite connection to judicial process, but finding social worker defendant entitled to only qualified immunity for taking custody of child without prior hearing); Malachowski v. City of Keene, 787 F.2d 704 (1st Cir.1986) (holding juvenile officer entitled to absolute immunity for filing of sworn juvenile delinquency petition). But see Snell v. Tunnell, 920 F.2d 673 (10th Cir.1990) (declining to extend absolute immunity to caseworkers who, in part, sought court order allowing removal of children from home); Austin v. Borel, 830 F.2d 1356 (5th Cir.1987) (declining to extend absolute immunity to social worker filing false verified complaint to obtain custody of child). But see also Hoffman v. Harris, 511 U.S. 1060, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994) (Thomas, J., dissenting) (dissenting from denial of petition for certiorari, and suggesting that social workers should not enjoy absolute immunity afforded to prosecutors).
Although we recognize that there are certain distinctions between caseworkers in this context and prosecutors in criminal cases, we find no meaningful distinction between the role of the federal agency officials in Butz and the role of Ms. Sackett in this case. Thus, concerning the federal claim alleged under § 1983, we hold that Ms. Sackett is entitled to absolute immunity for filing the dependency petition involving Zachary, even if she intentionally misrepresented the factual basis for dependency in the petition. We therefore affirm the dismissal of this claim.
Concerning the state law claim for malicious prosecution, however, we do not agree that absolute immunity should be extended to Ms. Sackett's actions in filing the sworn petition for dependency of Zachary.[1] Florida case law has never extended absolute immunity to caseworkers such as Ms. Sackett.[2] In seeking such immunity, a heavy burden rests upon Ms. Sackett to establish that public policy requires an exemption of this scope. See, e.g., Butz, 438 U.S. at 506, 98 S.Ct. 2894.
We find that Ms. Sackett's role in the dependency proceeding was not fully analogous to the role of a prosecutor. Ms. Sackett was not an attorney relying upon information provided to her by law enforcement. Instead, she investigated whether there was evidence that the child *25 was dependent as defined in section 39.01(10), Florida Statutes (1987), and also decided whether the evidence was sufficient to support the filing of her sworn petition for dependency. Ms. Sackett's role in the institution of this proceeding is comparable to a blend of both that of a prosecutor and that of a police officer whose arrest affidavit results in prosecution. The police officer is entitled to only qualified immunity. See, e.g., Beizer v. Judge, 743 So.2d 134 (Fla. 4th DCA 1999). Given the dual role of Ms. Sackett in investigating the claims and filing the dependency petition, and the immense power thus placed in her hands, we believe the best balance of the interests involved in these circumstances supports a grant of only qualified immunity.[3]
Because Ms. Sackett is not entitled to absolute immunity from malicious prosecution by our state's common law, she may claim only the benefit of the qualified immunity provided to her by section 768.28(9)(a), Florida Statutes (1987).[4] This immunity does not protect her if her actions were taken with "malicious purpose."
§ 768.28(9). See also Sebring Utils. Com'n v. Sicher, 509 So.2d 968 (Fla. 2d DCA 1987) (noting that section 768.28(9) absolves state agencies or subdivisions from liability in malicious prosecution cases against their employees simply by the nature of the cause of action). Thus, we conclude that the malicious prosecution claims by Ms. Johnson, individually and on behalf of Zachary, related specifically to the filing of this dependency petition are not appropriate for summary judgment at this time.
Affirmed in part and reversed in part.
GREEN and STRINGER, JJ., Concur.
NOTES
[1] We recognize that the detention of Zachary after Ms. Johnson's release from jail lasted less than two weeks. Thus the damages arising out of this particular claim may be limited.
[2] We note, however, that the statutory grant of immunity under section 768.28(9)(a), Florida Statutes (1987), does not foreclose a grant of absolute immunity for a person acting as a "quasi-judicial officer." Office of the State Attorney, Fourth Judicial Circuit of Fla. v. Parrotino, 628 So.2d 1097 (Fla.1993).
[3] At the time Ms. Sackett filed the dependency action involving Zachary, section 39.404(1), Florida Statutes (1987), permitted a non-attorney agent of the Department to file the sworn petition, subject only to a review of legal sufficiency by the state attorney. We note that chapter 39 has since been substantially amended and now requires an attorney representing the Department file the petition for dependency. § 39.501(3)(a), Fla. Stat. (2000). In addition, the legislature has now specifically provided only qualified immunity for caseworkers like Ms. Sackett for "any act authorized or required" by chapter 39, § 39.203(1)(a), Fla. Stat. (2000). Thus, in future cases, the distinct roles of caseworker and department attorney will be more akin to that of an investigating officer and prosecutor, respectively.
[4] Ms. Johnson has argued that section 415.511, Florida Statutes (1987), provided Ms. Sackett with a grant of only qualified immunity for her actions. In fact, section 415.511 grants qualified immunity for "any act authorized or required by ss. 415.502-415.514." The sections referred to do not involve the filing of dependency petitions, but instead relate to the prelitigation investigation of a child abuse complaint. Chapter 39, Florida Statutes (1987), included no similar grant of immunity, other than section 39.455 which granted qualified immunity to the social service agency and its employees and agents for failing to provide services under a performance plan.