**Vanessa BOWSER, on her own behalf and on behalf of Kiana Bowser, her minor child, Plaintiffs,**

v.

**BLAIR COUNTY CHILDREN AND YOUTH SERVICES, Mary Anne Burger, M. Georgette Ayers, Kathleen W. Engelbret, Mary Lou Hoover, Camille C. Metzgar, Denise A. Stitt, Amy C. McIntosh, Diane R. Litzinger, Jennifer A. Hershey, Kirin M. Camberg, Denise Grubb, Family Intervention Crisis Services, Terry Olivieri, Shelley Helsel, and John Doe and others as yet unknown, Defendants.**

No. 04–67J.

United States District Court, W.D. Pennsylvania.

Nov. 18, 2004.

Robert W. Lape, Jr., Roaring Spring, PA, for Plaintiffs.

David L. Haber, Weinheimer, Schadel & Haber, Randy K. Hareza, Sheila M. Burke, Esq., Burns, White & Hickton, Pittsburgh, PA, for Defendants.

## MEMORANDUM OPINION and ORDER OF COURT

GIBSON, District Judge.

### BRIEF BACKGROUND/JURISDICTION

This matter comes before the Court on Defendants, Blair County Children and Youth Services, and its related Defendant supervisors, caseworkers and employees, (BCCYS Defendants) Motion to Dismiss (Document # 20) and Defendants, Family Intervention Crisis Services, Terry Olivieri and Shelley Helsel (FICS Defendants) Motion to Dismiss (Document # 22). For the reasons stated herein, the BCCYS Defendants' Motion to Dismiss (Document # 20) and FICS Defendants' Motion to Dismiss, (Document # 22), are denied in part and granted in part.

The Plaintiffs filed a Complaint on March 31, 2004 (Original Complaint) and an Amended Complaint (Complaint) on April 1, 2004. The Complaint contained fifteen counts and one hundred sixty-five numbered paragraphs alleging violations of federal procedural due process, substantive due process, unreasonable search and seizure, equal protection, invasion of privacy, and freedom of association by means of a civil action under 42 U.S.C. § 1983 as well as violations of the Plaintiffs' rights under the Pennsylvania Constitution including due process, unreasonable search and seizure, equal protection, invasion of privacy, and Pennsylvania state law actions of false imprisonment, intentional infliction of emotional distress, abuse of process and wrongful use of civil proceedings.

This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1343 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## ANALYSIS

### General

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12 (b)(6):

the district court [is] required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant. *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989); *D.P. Enters., Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir. 1984). In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record. Moreover, a case should not be dismissed for failure to state a claim

unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 467 U.S. 69, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *D.P. Enters.,* 725 F.2d at 944.

*Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3rd Cir.1994). In considering a motion to dismiss, the court is not deciding the issue of whether a plaintiff will ultimately prevail, but is deciding if the plaintiff is entitled to offer evidence to support claims. *Lake v. Arnold,* 112 F.3d 682 (3rd Cir.1997); *Nami v. Fauver,* 82 F.3d 63 (3rd Cir.1996).

[D]ismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the

face of a defective pleading whether the plaintiff actually can state a claim for relief.

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3rd ed.2004)(footnotes omitted).

All factual allegations of the complaint need not be set forth for the purposes of this motion. It is sufficient to state that, in summary, this civil action concerns the circumstances of the physical seizure of the child Kiana Bowser (Plaintiff–Minor), the subsequent process of adjudication of her dependency, the manner in which BCCYS Defendants sought the Plaintiff–Minor's removal and adjudication of dependency, the ensuing conditions placed upon Vanessa Bowser (Plaintiff–Mother) for visitation with Plaintiff–Minor and the actions and procedures engaged in by BCCYS Defendants and FICS Defendants during the dependency proceedings. The Court notes that the Superior Court of Pennsylvania granted the appeal of the Plaintiff–Mother and reversed the finding of dependency of Plaintiff–Minor and the conditions placed upon her by BCCYS and the state trial court. *See In the Interest of K.B.*, Superior Court of Pennsylvania, Nos. 1280 WDA 2003, 1305 WDA 2003 (non-precedential decision) (attached to Plaintiffs' Brief in Opposition (Document # 26)).

The Court begins its analysis with the BCCYS Defendants' Motion to Dismiss.

### BCCYS Defendants' Motion to Dismiss

■ BCCYS Defendants present three basic arguments in support of their motion to dismiss: 1) the individual defendants of this group of defendants are entitled to absolute immunity; 2) there is a lack of causal relationship between the acts of BCCYS Defendants and the removal of the Plaintiff–Minor from the Plaintiff–Moth-

er's custody; and 3) should all federal claims be dismissed, this Court should relinquish its supplemental jurisdiction over the state law claims.

At the outset, the Court notes that the alleged violations of constitutional rights set forth by Plaintiffs are judicially recognized and established cognizable claims. With that understanding, the Court can now move onto the first issue of the applicability of immunity. *Siegert v. Gilley*, 500 U.S. 226, 232–233, 111 S.Ct. 1789, 1793–1794, 114 L.Ed.2d 277 (1991).

BCCYS Defendants cite one case in support of dismissal of the claims against the individual defendants: *Ernst v. Child and Youth Services of Chester County*, 108 F.3d 486 (3rd Cir.1997). In *Ernst* the Third Circuit concluded that:

Applying the principles set forth in *Butz, Imbler*[1], and their progeny to the instant case, we hold that the CYS defendants are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings. Their immunity is broad enough to include the formulation and presentation of recommendations to the court in the course of such proceedings.

*Ernst* at 495. The court reached this conclusion based upon the following: it likened the CYS employees to prosecutors; there was a threat of CYS workers being overwhelmed by suits against them for their official actions; and the fact that CYS agencies have a supervision system for their employees that would ensure that the correct decisions regarding their actions are made. *Ernst* at 495–497. However, like other courts of appeals, the Third Circuit restricted its holding: "We emphasize that our holding concerns only

---

1. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Imbler v. Pacht-*man, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

actions taken by child welfare workers in the context of dependency proceedings. Like our sister courts in the Fifth, Sixth, Seventh, and Tenth Circuits, we would be unwilling to accord absolute immunity to 'investigative or administrative" actions taken by child welfare workers outside the context of a judicial proceeding.' [2] *Ernst v. Child and Youth Services of Chester County*, 108 F.3d 486, 497 n. 7 (3rd Cir. 1997) (citations omitted).

BCCYS Defendants contend that because the issue of dependency was decided in state court, the individually named Defendants are "entitled to absolute immunity for those decisions relative to the dependency proceedings of the plaintiffs." Defendants Brief, p. 4. BCCYS Defendants also argue that the Plaintiffs are attempting to attack the state dependency proceeding in this district court rather than the Pennsylvania state appellate courts. *Id.*

Plaintiffs counterargue that 1) Blair County CYS as an agency cannot plead the immunity found in *Ernst* as it is only for individual caseworkers; and 2) the actions alleged in the complaint "do not relate to the prosecution of the judicial proceedings." Plaintiffs' Brief in Opposition, p. 5.

Since *Ernst* concerned absolute immunity only for CYS caseworkers under § 1983 claims, we will proceed with the understanding that BCCYS Defendants seek to argue for absolute immunity only as to the Plaintiffs' § 1983 claims. BCCYS Defendants did not address the applicability of immunities under Pennsylvania law to the Pennsylvania state law claims. Therefore, we will not address the issue of whether immunities exist for the BCCYS Defendants as to the Pennsylvania state law claims.

A review of the complaint reveals that the Plaintiffs' § 1983 causes of action are based upon alleged violations of various federal constitutional rights relating either to the circumstances of the seizure of the Plaintiff–Minor or to the circumstances of the subsequent adjudication of dependency. The Plaintiffs rest upon the fact that the taking of custody by BCCYS was done without prior judicial authorization and was, effectively, an illegal seizure of the Plaintiff–Minor. The individual BCCYS Defendants counterargue that they are entitled to the shield of absolute immunity based upon the *Ernst* case.

The *Ernst* Court recognizes the right to absolute immunity of CYS caseworkers for actions in the preparation, initiation and prosecution of a dependency proceeding. Nonetheless, the Third Circuit in *Ernst* stated in footnote seven of the opinion that it would be unwilling to extend the protection of absolute immunity to " 'investigative or administrative' actions taken by child welfare workers outside the context of a judicial proceeding." Included in the case citations within footnote seven is *Austin v. Borel*, 830 F.2d 1356 (5th Cir.1987) and its explanatory parenthetical that reads: "holding that filing of complaint that allowed child service to obtain custody but did not initiate adjudicative proceeding was analogous to police officers' complaint filed to obtain arrest warrant and was therefore entitled only to qualified immunity." *Ernst*, at 497 n. 7.

On the surface, *Austin* appears to apply to the situation alleged in the Plaintiffs' Complaint so as to permit the Plaintiffs' § 1983 actions to survive the Defendants' motion because their allegations relate to the initial taking of custody of the Plaintiff–Minor and not the actions subsequent to the filing of the juvenile petition. However, a review of *Austin* reveals that the

---

**2.** As noted later in this opinion, we conclude that these statements are dicta.

Louisiana procedure under review in that case was different from the procedure used in Pennsylvania to take custody and initiate a juvenile adjudicative proceeding:

Austin's section 1983 action does not, however, challenge the parish district attorney's decision to file a petition. Instead she seeks to recover for an allegedly false verified complaint filed by Ronald Borel. Under the Louisiana Code of Juvenile Procedure, a verified complaint serves a function wholly distinct and different from that of a petition. A verified complaint is a sworn statement of fact by "a peace officer, probation officer, district attorney, or other person designated by the court" indicating the existence of reasonable grounds to believe a child should be taken into custody. Upon presentation of a verified complaint, the juvenile court may issue an instanter order directing the child's removal from its parents' custody. *Issuance of an instanter order upon the filing of a verified complaint initiates custody, but only filing the petition itself initiates the adjudication process.*

*Austin v. Borel,* 830 F.2d 1356, 1361 (5th Cir.1987)(footnotes omitted)(emphasis added).

In Pennsylvania, among the four means used to commence a proceeding under Pennsylvania's Juvenile Act is the action of taking custody of a child pursuant to an order of court:

(a) General rule.-A proceeding under this chapter may be commenced:

3. In paragraph 21 of the Complaint, the Plaintiffs also reference an "oral" order apparently issued on the same date authorizing custody. This oral court order is also referenced in the Juvenile Petition which is attached to the Original Complaint as Exhibit

\* \* \*

(2.1) By taking a child into custody in accordance with the provisions of section 6324 (relating to taking into custody).

\* \* \*

42 Pa.C.S.A. § 6321. 42 Pa.C.S.A. § 6324 reads in pertinent part:

A child may be taken into custody:

(1) Pursuant to an order of the court under this chapter. Prior to entering a protective custody order removing a child from the home of the parent, guardian or custodian, the court must determine that to allow the child to remain in the home is contrary to the welfare of the child.

42 Pa.C.S.A. § 6324.

The Plaintiffs' Complaint admits that there was a signed order from a state judge entitled "EMERGENCY ORDER OF COURT" and dated April 1, 2002.[3] This emergency order cites "exigent circumstances" as the basis for placement of the Plaintiff–Minor in the physical and legal custody of BCCYS. Plaintiffs' Complaint, Exhibit "A". The order also notes that it is based upon the Pennsylvania Juvenile Act. *Id.* By accepting these facts as true, as the Court must in evaluating a motion to dismiss, it becomes apparent that on April 1, 2002, BCCYS workers Hershey and Camberg acted upon an order of Court giving BCCYS custody of the Plaintiff–Minor. Since taking a child into custody pursuant to such an order is considered by Pennsylvania law (42 Pa.C.S.A. § 6321 and § 6324) to initiate the process of adjudicating dependency, the Court finds that the actions of Defendants Her-

"A". Therefore, on the day custody of Plaintiff–Minor was taken by BCCYS there were two orders of court authorizing the custody actions, one an oral order and one a written order from the Court of Common Pleas of Blair County.

shey and Camberg, and any other Defendants who participated in the evaluation and consideration of the evidence and presentation of that evidence to the state judge in order to secure an order of custody, would be protected by absolute immunity since such actions under Pennsylvania law constitute "preparing for" and "initiating" dependency proceedings. Such actions are clearly part of the judicial dependency adjudication proceeding in Pennsylvania, whereas in *Austin, supra,* the actions of the caseworkers were not part of the adjudication process under Louisiana law.

Accordingly, this holding is consistent with *Austin,* to the extent that *Austin* concluded that only actions concerning the initiation of the adjudicative process were permitted to be shielded with absolute immunity. However, to the extent that our holding may be found to be inconsistent with *Austin* and, more specifically, the Third Circuit's reliance on that case in the *dicta* set forth in *Ernst,* this Court notes that the issue of whether taking a child into custody pursuant to a court order initiates the adjudication process in Pennsylvania so as to permit invocation of absolute immunity was not before the *Ernst* court. In our reading of *Ernst,* footnote seven appears to be *dicta* as it reads "we would be unwilling to accord absolute immunity to 'investigative or administrative' action taken by child welfare workers outside the context of a judicial proceeding." *Ernst* at 497 n. 7.[4]

The Third Circuit also considered a similar matter concerning a child welfare employee from Philadelphia in the case of *Miller v. City of Philadelphia,* 174 F.3d

368 (3rd Cir.1999). *Miller* concerned a § 1983 claim against a city social worker for violation of substantive due process for the pursuit of an investigation into child abuse without probable cause. *Miller* at 374. The *Miller* court ultimately found that the social worker's actions did not "shock the conscience" so as to subject him to liability. Nevertheless, the *Miller* court again asserted the view that absolute immunity did not extend to investigative or administrative acts citing to *Ernst. Miller* at 376 n. 6. This footnote is also viewed as *dicta* by this Court for the same reasons as the footnote in *Ernst* is viewed as *dicta* (see footnote four of this Memorandum Opinion). Although the facts of *Miller* are similar to the facts of the case *sub judice,* this statement in footnote six was *dicta* and the issue in *Miller* was slightly different: whether the plaintiff's claim was valid so as to permit the application of qualified immunity. In the case *sub judice,* the question is whether the individual BCCYS Defendants can invoke absolute immunity. Therefore, we do not consider this holding today, in which we find that absolute immunity protects the actions of the individual BCCYS Defendants with regard to the § 1983 claims, to be contrary to the Third Circuit's opinion in *Ernst* or *Miller* for two reasons: Primarily because our holding is consistent with both *Ernst* and *Miller* in that the taking of custody pursuant to a court order commences the dependency adjudication proceeding in Pennsylvania and therefore, the actions of the individual BCCYS Defendants constitute "preparation" and "initiation" of a dependency proceeding; and alternatively, because the footnotes in *Ernst* and *Miller* are *dicta.*

---

4. The Third Circuit has previously adopted the Seventh Circuit's understanding of *dicta:* "Chief Judge Posner has aptly defined dictum as 'a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it.' *Sarnoff v. American Home Prods. Corp.,* 798 F.2d 1075, 1084 (7th Cir.1986)." *In re McDonald,* 205 F.3d 606, 612 (3rd Cir.2000).

Notwithstanding this primary analysis, the Court observes that under two alternative analyses, our conclusion to grant the individual BCCYS Defendants' motion to dismiss with regard to the § 1983 claims would remain the same. The first alternative analysis addresses the situation which would exist if this Court had concluded that absolute immunity did not apply to the actions of the individual BCCYS Defendants, and had then proceeded with an analysis of the application of qualified immunity. The Third Circuit has discussed qualified immunity in the following manner and terms:

A right is "clearly established" for qualified immunity purposes only if "[t]he contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Thus, defendants are entitled to qualified immunity if "reasonable officials in [their] position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." Even where officials "clearly should have been aware of the governing legal principles, they are nevertheless entitled to immunity if based on the information available to them they could have believed their conduct would be consistent with those principles."

However, for reasonable officials to be on notice that their conduct would be unlawful, there need not be "a previous precedent directly on point." Rather, there need only be "some but not precise factual correspondence between relevant precedents and the conduct at issue," so that "in the light of pre-existing law the unlawfulness [would be] apparent."

*Larsen v. Senate of Com. of Pa.,* 154 F.3d 82, 87 (3rd Cir.1998)(internal citations omitted).

The "seizure" of the Plaintiff–Minor occurred on April 1, 2002 and "is said to have been authorized by an 'oral' Order of Court. . . ." Complaint ¶ 21. The existence of an April 1, 2002 oral court order authorizing the taking of custody of the Plaintiff–Minor is also stated in the Juvenile Petition which is attached as Exhibit "A" to the Original Complaint. On that same day, April 1, 2002, the Emergency Order was signed by a state court judge granting BCCYS physical and legal custody of the Plaintiff–Minor. Original Complaint, Exhibit "A".

Although the actual issue has not been before it for adjudication, the Third Circuit has recognized that the district courts of this circuit have found Pennsylvania's procedure used in acquiring *ex parte* orders which grant custody to county CYS agencies to be constitutional. *Miller* at 372 n. 4. In construing the facts alleged in the Plaintiffs' Complaint in a light most favorable to the Plaintiffs the Court determines that the juvenile custody and dependency procedure found in the Pennsylvania law has been complied with in the case *sub judice.* *Miller, supra,* was decided in 1999. *Miller's* recognition of the constitutionality of the Pennsylvania juvenile process concerning *ex parte* emergency custody orders, and this Court's finding that such procedure has been followed in this case, clearly permits the application of qualified immunity to the individual BCCYS Defendants in this case. Therefore, if absolute immunity had been denied by this Court and qualified immunity was an issue in this matter, such qualified immunity would extend to the circumstances of this case so as to protect the acts of the individual BCCYS Defendants.

Additionally, the Court notes that it would also come to the conclusion that the motion to dismiss should be granted for other alternative reasons. Initially, we

note that those matters relating to the adjudication of dependency are matters in which the individually named BCCYS Defendants are entitled to absolute immunity. Portions of Counts III and VI, and all of Count IV, as viewed by the Court, would be dismissed even in the absence of the contradiction found in the Plaintiffs' Complaint discussed hereinafter because it is clear that these portions of the Complaint relate solely to the preparation and prosecution of the dependency proceeding which are bases for invocation of absolute immunity.

The remaining counts concerning § 1983 claims (Counts I, II, V and portions of III and VI) relate to the actual act of taking custody of the Plaintiff–Minor by BCCYS Defendants. A review of the Complaint's factual background and Exhibit A to the Original Complaint reveals that there was an oral order of court and also a written order of court (see paragraph 21 and Exhibit A) granting custody of Plaintiff–Minor to Defendant–BCCYS. However, the Plaintiffs allege in their separate remaining counts that such action was taken without prior judicial authority or any other legal authorization. This contradiction within the Complaint will be resolved by the Court in favor of the existence of a prior order of court, which was oral, followed by a ratifying written order on the same date, as bases for the taking of custody. See e.g., Sazerac Co., Inc. v. Falk, 861 F.Supp. 253 (S.D.N.Y.1994)(finding that when a document contradicts an allegation of the complaint, the document controls). Moreover, the facts derived from the Complaint and Exhibits in this case do not allow any conceivable amendment of the Complaint that could cure the Plaintiffs' Complaint to prevent dismissal based upon immunity.

Therefore, accepting as true and construing the facts in the Plaintiffs' Complaint in the light most favorable to the Plaintiffs, the Court finds that the individually named BCCYS Defendants are entitled to absolute immunity for their alleged actions contained in Counts I through VI and, therefore, Counts I through VI are dismissed as to the individual BCCYS Defendants but remain as to Defendant–BCCYS. The Court concludes that no amendment by the Plaintiffs can cure the fact that absolute immunity applies to these Defendants in the case sub judice. Based upon the fact that Defendant–BCCYS is not entitled to absolute immunity as to Counts I through VI, it remains as a Defendant. The remaining Counts VII through XV are not dismissed as to any of the individual BCCYS Defendants or the Defendant–BCCYS as these defendants did not argue for the application of immunity under Pennsylvania state law with regard to the remaining Pennsylvania state law claims found at Counts VII through XV.

■ The BCCYS Defendants' remaining argument is that there is a lack of causation between the BCCYS Defendants' actions and any violation of constitutional rights of the Plaintiffs. The Third Circuit case law regarding § 1983 actions requires causation between the alleged act of the defendant and the harm resulting to the plaintiff. The Supreme Court in Collins v. City of Harker Heights, Tex., 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) recognized a two part test for § 1983 claims: 1)whether the harm alleged was caused by a constitutional violation; and 2) whether the municipality is responsible for that causation. Collins, at 120, 503 U.S. 115, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261, 270. See also Searles v. Southeastern Pennsylvania Transp. Authority, 990 F.2d 789 (3rd Cir.1993) (citing Collins). Acknowledging that causation is a necessary element in proving a § 1983 claim against

a local governmental entity, the Third Circuit recognized proximate causation and intervening causes to be appropriate concepts to use in § 1983 actions. *See Hector v. Watt*, 235 F.3d 154 (3rd Cir.2000). The issue of causation was revisited by the Third Circuit in *Egervary v. Young*, 366 F.3d 238 (3rd Cir.2004) where, in the context of a *Bivens*[5] action, the Court analyzed the status of an *ex parte* order directing the seizure of a minor from his kidnapper-father for purposes of the International Child Abduction Remedies Act. In *Egervary*, the district court judge issued an *ex parte* order of seizure without imposing a condition of a post-order hearing in order to satisfy the federal due process rights of the kidnapper-father. The Third Circuit concluded that the error in not affording a post-order hearing was an error of law attributable to the judge alone, thus creating a supervening cause to remove liability from the attorneys and State Department officials seeking the *ex parte* order. *Egervary* at 250–251. Nonetheless, the court also acknowledged that in those situations where the relevant facts relied upon by a judge were incorrect, actions taken by a judge on such an incorrect factual basis would not create a supervening cause to prevent liability for those individuals who furnished the incorrect information. *Egervary* at 250–251. Although *Egervary* was a *Bivens* action, the Third Circuit stated that such actions "are simply the federal counterpart to § 1983 claims brought against state officials, and because tort law causation analysis serves as the basis for determining causation in § 1983 actions, tort law causation must govern our analysis of this *Bivens* claim." *Egervary*, 366 F.3d 238, 246 (internal citations omitted).

*Egervary* provides the most analogous precedent for the causation analysis in the case *sub judice* concerning matters of *ex parte* orders and custody of children in the context of § 1983 claims. Applying *Egervary* to the case before this Court, and accepting as true the allegations of the Plaintiffs' Complaint, the Plaintiffs allege that seizure of the minor child was based upon a juvenile petition that "resulted in an 'oral' Order of Court." Complaint ¶ 22. Further, it was alleged by the Plaintiffs that Defendant Stitt initiated the *ex parte* contact with the state judge that resulted in the oral order of court; Plaintiffs further aver that in this contact Defendant Stitt falsely advised the state judge that the emergency order was based upon "a violation of an active Voluntary Safety plan requiring that Vanessa Bowser not allow unsupervised contact between Kiana with her father, David Lee." Complaint ¶ 25. Thus, the Plaintiffs have alleged a situation of misrepresentation upon which the doctrine of supervening causes, in regard to judicial actions, cannot apply. *Egervary, supra.* Based upon these averments, the Court must deny the Motion to Dismiss as to the remaining Defendant, BCCYS.

Finally, the Court must deny Defendant–BCCYS' argument that supplemental jurisdiction over the state law claims should be declined, for the reason that there remain outstanding federal claims against Defendant–BCCYS. 28 U.S.C. § 1367(a).

### FICS Defendants' Motion to Dismiss

The Court will now proceed to the FICS Defendants'. Motion to Dismiss. The FICS Defendants move for dismissal based upon the following arguments: (1) the Plaintiffs fail to demonstrate that

---

**5.** *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91

S.Ct. 1999, 29 L.Ed.2d 619 (1971)

FICS Defendants' actions were state action under § 1983 using the "exclusiveness" test, the "acted in concert" test, and "symbiotic relationship" test; (2) if the FICS Defendants are considered state actors under one of these tests, qualified immunity applies to their actions; (3) Defendant–FICS itself is not liable for the actions of Defendants Olivieri and Helsel because *respondeat superior* liability theory cannot establish liability for Defendant–FICS as their employer; and (4) Plaintiffs have failed to establish a violation of their right to privacy under the Pennsylvania Constitution.[6]

■ The first issue raised by the FICS Defendants is a lack of "state action" in the § 1983 claims. "State action," as understood in the context of a Fourteenth Amendment action, has been found to be equivalent to being action "under color of state law" for a § 1983 action; however, "under color of state law" does not always equate to "state action" under the Fourteenth Amendment. *Abraham v. Raso,* 183 F.3d 279, 287 (3rd Cir.1999) (citations omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (citations omitted).

The Supreme Court has developed three tests to be used to determine the existence of "state action" in the context of Four-

teenth Amendment actions when the actor committing the acts cannot be fairly described as a state actor: (1) the "symbiotic relationship," "nexus," or "joint participation" test; (2) the "public function" test; and (3) the "state compulsion" test. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 939, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982).[7]

Under the "public function" (or "exclusiveness") test, it is not enough to establish state action with proof demonstrating a private actor is performing a public function; it must be proven that the function performed is "traditionally the exclusive prerogative of the State." *Rendell–Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418, 428 (1982) (citations omitted). First, the Court notes that the Plaintiffs only specifically name the FICS Defendants in Counts V and X of the Complaint, and then, as understood by this Court, only to the extent that they were performing a governmental role. Such allegations fail to support the "exclusivity" test, as performing a public function, in that the act of providing for children is a role typically performed by a biological or adoptive parent. However, there exist circumstances where children are orphaned or abused which require the state to care for them *in loco parentis.* Therefore, child rearing and child care are not functions exclusive to the state, but rather are roles fulfilled by the state in the absence of

**6.** The parties appear to impliedly concede that the first prong of the test in *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), that is the exercise of a state created right or privilege or a state imposed rule of conduct, is present as they limit their argument to the second prong of the *Lugar* test, the question of whether the party causing the deprivation was in fact a state actor. *Lugar* at 937, 102 S.Ct. 2744, 2753–2754, 73 L.Ed.2d 482, 495(1982).

**7.** The FICS Defendants have argued three tests for establishing "state action". Although not labeled by the Defendants as they are labeled here, (as adapted from *Lugar* ), the tests used herein are the same as those tests argued by the Defendants. The test used in *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) is inapplicable to the case *sub judice. Lugar* at 939, 102 S.Ct. 2744, 2755, 73 L.Ed.2d 482, 497(1982).

viable alternatives. Accordingly, considered in this light, the parenting of a child, providing for a child's physical and emotional needs, as well as exercising physical and legal custody over a child, are not exclusive state functions such as the act of overseeing elections of public officials. *See Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953). As a result, the Court must conclude that the acts alleged to have been performed by the FICS Defendants, as agents for BCCYS to fulfill the duties of BCCYS, do not convert the FICS Defendants into state actors under the "exclusiveness" test.

Under the "state compulsion" (or "acted in concert") test, which originated in the case of *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), state action is present if the state compels an intermediary to, in essence, do the state's bidding. Id. at 170–171, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142, 161–162. This test has been refined subsequent to the holding in *Adickes* and has been summarized as follows: "[O]ur precedents indicate that a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534, 546 (1982) (citations omitted).

The Plaintiffs argue in their brief for leave to amend their complaint to expand their allegations further in order to develop the relationship between FICS Defendants' actions and Defendant–BCCYS. They further argue that the FICS Defendants performed the acts of Defendant–BCCYS and took direction from Defendant–BCCYS as well as enforced Defendant–BCCYS requirements established for the Plaintiffs and even imposed their own conditions upon the Plaintiffs. Plaintiffs' Brief in Opposition, p. 3. Plaintiffs also refer to the fact that FICS was employed by Defendant–BCCYS pursuant to 23 Pa. C.S.A. § 6364 which permits utilization and/or purchase of services from a public or private agency. Plaintiffs' Brief in Opposition, p. 3.

The Court determines that the actions taken by the FICS Defendants could be found to have been conducted with the aid, direction, and encouragement of Defendant–BCCYS. Taking the Plaintiffs' allegations and reasonable inferences arising from them as true, the FICS Defendants' position as agents for Defendant–BCCYS places them in essentially a surrogate position for Defendant–BCCYS. Considering the facts as alleged, to the extent that FICS Defendants were enforcing the directives of Defendant–BCCYS against the Plaintiffs as to visitation and conditions of unification, FICS Defendants were enforcing the policies of Defendant–BCCYS. FICS Defendants would not be in such a position to enforce conditions upon the Plaintiffs were it not for Defendant–BCCYS hiring Defendant–FICS as its agent and intermediary in order to accomplish the goal of reunification of the Plaintiffs. Therefore, for the purposes of this motion, the Court finds the FICS Defendants to be state actors in fulfilling the functions of Defendant–BCCYS.

Since, for the purposes of this motion, the Court has concluded that the FICS Defendants are state actors, we need not analyze this issue under the "symbiotic," "nexus," or "joint participation" test set forth in *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Although, the Court notes that an application of the facts of this matter to the test in *Burton* would result in a conclusion that the FICS Defendants are not state actors under that

test because of the lack of interdependency between Defendant–FICS and Defendant–BCCYS in the context of *Burton*. There was no business relationship between the Defendants, nor in the larger sense, an interdependency between the Defendants as the hiring of Defendant–FICS was *permissible* by statute, and no facts further the idea that Defendant–FICS was essential to the success of Defendant–BCCYS' operation. The Court will now proceed to analyze the FICS Defendants' second argument, that the FICS Defendants are entitled to qualified immunity.

■ In determining whether qualified immunity is applicable, the Court must first determine for the purposes of the motion if, in fact, a constitutional right was violated, and second, if that right was "clearly established" when the violation was alleged to have occurred. *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999). The federal rights alleged to have been violated are the Plaintiffs' rights to privacy; specifically the Plaintiffs claim a right to "be free from unreasonable publicity concerning one's private life" and "free from unreasonable intrusion upon one's seclusion, and from unreasonable government interference in personal affairs and independence in making important decisions [relating to the parent/child relationship]." Complaint ¶ ¶ 127–128, 130. Plaintiffs also allege that the invasion of privacy "continues with limitations on contact with David Lee, and the requirement that BCCYS be a party to any future custody litigation." Complaint ¶ 131.

The Third Circuit has recognized intrusion upon seclusion and freedom from unreasonable publicity about a person's private life to be part of the right to privacy. *Bartnicki v. Vopper*, 200 F.3d 109 (3rd Cir.1999). Privacy rights also include the right to make decisions regarding child rearing and family relationships. *Paul P. v. Verniero*, 170 F.3d 396 (3rd Cir.1999).

FICS Defendants respond by citing to the case of *Wyman v. James*, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971), a case involving the requirement of home visits to those families receiving Aid to Families with Dependent Children in New York. In *Wyman*, the recipient of benefits challenged the required condition of home visitation under the First, Third, Fourth, Fifth, Sixth, Ninth, Tenth and Fourteenth Amendments. The Supreme Court focused upon the issues regarding the Fourth Amendment and characteristics of the visit as a search under that amendment. The Supreme Court concluded that the home visitation was "a reasonable administrative tool; that it serves a valid and proper administrative purpose for the dispensation of the AFDC program; that it is not an unwarranted invasion of personal privacy; and that it violates no right guaranteed by the Fourth Amendment." *Wyman* at 326, 91 S.Ct. 381, 27 L.Ed.2d 408, 419 (1971).

FICS Defendants note that the alleged third persons who became aware of the Plaintiffs' affairs were unnamed in the Complaint, and that the Complaint does not indicate whether they were employed by Defendant–FICS. FICS Defendants assert that these third persons were in fact employed by Defendant–FICS, but assuming that the Plaintiffs' allegations are true, these defendants argue that the entry of these third persons into the Plaintiffs' home was not an "unreasonable intrusion." Defendants' Brief, p. 14. Pennsylvania's Child Protective Services law permits independent agencies to be hired to assist in the performance of duties (23 Pa.C.S.A. § § 6364, 6375) and in furtherance of its objectives (*see* 23 Pa.C.S.A. § 6373), and mandates visitation by the local CYS agency or its agent as a requirement to further

the general protective services. *See* 23 Pa.C.S.A. § 6375(g) and (m). This Pennsylvania law also mandates privacy as a matter of course in its operation. *See* 23 Pa.C.S.A. § § 6335, 6336, 6339, 6340. Indeed, the proceedings in court pursuant to the Juvenile Act are closed to the public, including proceedings related to petitions for dependency such as in the case *sub judice*. 42 Pa.C.S.A. § 6336. While Pennsylvania's recognition of the need for a policy of privacy in regard to matters of adjudication of dependency is not binding upon this Court in determining a violation of the right to privacy as alleged by the Plaintiffs, that recognition is in conformity with and supportive of an almost universal view found in the law that privacy exists with regard to matters surrounding the parent's rearing of children and with regard to the state's role in ensuring such child rearing is not abusive, damaging and stigmatizing. The Plaintiffs' allegations, accepted as true for purposes of this opinion, state that third persons were brought to the Plaintiffs' home. Complaint ¶ 129. These third persons are alleged to have been individuals not employed by Defendant–FICS or Defendant–BCCYS. Complaint ¶ 129. Finally, these third persons came to know the identity of the Plaintiffs and the fact that the Plaintiffs were clients of Defendant–BCCYS and Defendant–FICS. Complaint ¶ 129.

The FICS Defendants' reliance upon *Wyman* is misplaced due to by the fact that the visitation in *Wyman* is not alleged to have included visitation by "third parties", but only by an agency caseworker. While the Pennsylvania statute permits home visitation just as the New York statute in *Wyman*, the Pennsylvania statute and its accompanying system for adjudication of dependency recognize the need for privacy which this Court sees as mandatory for such a proceeding. The point of difference between *Wyman* and the case

*sub judice* is the alleged presence of third persons, not the fact that the visitations by any FICS Defendants or BCCYS Defendants were violations of privacy. Therefore, *Wyman* is distinguishable from the case *sub judice* even if the third persons had entered the Plaintiffs' residence at an appropriate time, their intrusion was reasonable and they did not publish any information obtained regarding the Plaintiffs. This is true because the presence of third persons, facilitated by employees of Defendant–BCCYS or Defendant–FICS, was in fact a publication of the Plaintiffs' circumstances to persons not privileged to be involved in the Plaintiffs' legal matters. Furthermore, it is clear to this Court that the right to privacy alleged to have been violated had been established by the year 2002, as evidenced by the case law from the Third Circuit previously cited. A reasonable person in the employ of Defendant–BCCYS or its agent, Defendant–FICS, would reasonably know that under the circumstances of performing duties of the state in furtherance of the reunification goal of Pennsylvania's Child Protective Services Law and the adjudication of a petition for dependency under the Juvenile Act, that, generally speaking, being accompanied by third persons not employees of Defendant–BCCYS or Defendant–FICS while performing the duties of these agencies would violate the Plaintiffs' right to privacy. Therefore, the Plaintiffs' allegations, which are accepted as true for the purposes of this motion, are sufficient to permit a fact finder to conclude that a clearly established constitutional right was violated. Accordingly, qualified immunity is not available to the FICS Defendants at this point of the litigation.

Defendant–FICS next argues that even if the claims against its employees, Defendants Helsel and Olivieri, survive this motion, Defendant–FICS should be dismissed

from the action because the Plaintiffs have not alleged that Defendant–FICS had in place a policy or custom of permitting third parties to be allowed into its clients' residences. The Court agrees with the Defendant–FICS that dismissal of the § 1983 against Defendant–FICS is appropriate. Nevertheless, in accordance with the law, the Court must provide the Plaintiffs the right to amend their complaint if it is possible to plead a viable cause of action. *See U.S. ex rel. Diamond v. Social Service Dept.,* 263 F.Supp. 971 (E.D.Pa. 1967); CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed.2004), *supra.* Therefore, leave to amend as to this issue will be granted to Plaintiffs.

■ Finally, the FICS Defendants argue that the Plaintiffs have failed to state a cause of action against them for invasion of privacy under the Pennsylvania Constitution. Defendants base this argument on the fact that the Plaintiffs failed to plead publication by any FICS employee or by the "third persons" regarding the identity of the Plaintiffs or their involvement with Defendant–BCCYS and Defendant–FICS. The FICS Defendants correctly cite to the fact that the right to privacy under the Pennsylvania Constitution includes two distinct privacy interests:

> The constitutional right to privacy includes two classes of interests: (1) freedom from interference in the making of certain important personal decisions; and (2) freedom from the disclosure of certain matters which an individual deems so personal that publication adversely affects one's right to the pursuit of life, liberty and happiness. *In re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73 (1980).

*Fischer v. Com., Dept. of Public Welfare,* 116 Pa.Cmwlth. 437, 543 A.2d 177, 179 (1988). Defendants also correctly assert that the Third Circuit has concluded that the standard that the Pennsylvania and Federal courts would use in evaluating an alleged violation of the right to privacy for disclosing confidential information is identical. This standard is discussed as follows:

> Thus, as in most other areas of the law, we must engage in the delicate task of weighing competing interests. The factors which should be considered in deciding whether an intrusion into an individual's privacy is justified are the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*U.S. v. Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3rd Cir.1980). In *Westinghouse,* the privacy issue concerned medical records. Adapting this inquiry to the circumstance of bringing third persons to the Plaintiffs' residence in the case *sub judice,* the facts, as alleged, state a cause of action for invasion of privacy.

Balancing the *Westinghouse* factors, the Court finds that the relationship between Defendant–FICS and the Plaintiffs was established in the context of a state dependency proceeding, a proceeding, as noted above, that is accorded privacy both in the court proceedings and the maintaining of records regarding a child's dependency. The information at issue, namely the Plaintiffs' involvement with Defendant–BCCYS and Defendant–FICS, is in itself a confidential matter that is in need of protection

by Defendant–BCCYS and Defendant–FICS. Access to such information is restricted to those who are parties to a case and related state authorities, not the general public. By bringing third persons into Plaintiffs' residence during visits related to dependency proceedings, FICS Defendants, in essence, revealed the involvement of the Plaintiffs with Defendant–BCCYS and Defendant–FICS, a fact that would otherwise not be discoverable by the general public. The potential results from this revelation could include harm to the Plaintiffs' reputation, embarrassment and a resulting stigma in the Plaintiffs' community and possible concomitant denials of services or access to opportunities in that community. These adverse results are in addition to the harm resulting to the relationship between the Plaintiffs and Defendant–BCCYS and Defendant–FICS, as these agencies are engaged to mend and protect the integrity of the family and to promote reunification, not to reveal the Plaintiffs' difficulties to the public at large.

The defendants do not address the adequacy of safeguards used in providing their services to individuals such as the Plaintiffs, nor do they address the need for the presence of third persons in the Plaintiffs' residence. Thus it appears to the Court that discovery by both parties is necessary on this issue. Nonetheless, it is abundantly clear from the statutory mandates of Pennsylvania that introduction of uninvolved third parties into the services provided by Defendant–BCCYS and Defendant–FICS would violate the requirement of confidentiality surrounding dependency proceedings and services related to those proceedings which are provided by these agencies.

In conclusion, balancing all of these factors found in *Westinghouse,* the Court finds that the motion to dismiss the Plaintiffs' claim against the FICS Defendants in Count X of the Complaint is denied as the Plaintiffs have stated a claim upon which relief may be granted.

**AND NOW** this 18th day of November, 2004, upon consideration of the BCCYS Defendants' Motion to Dismiss (Document # 20) and the FICS Defendants' Motion to Dismiss (Document # 20), and in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the BCCYS Defendants' Motion to Dismiss is GRANTED IN PART as to the issue of absolute immunity for the individually named BCCYS Defendants, MARY ANNE BURGER, M. GEORGETTE AYERS, KATHLEEN W. ENGELBRET, MARY LOU HOOVER, CAMILLE C. METZGAR, DENISE A. STITT, AMY C. McINTOSH, DIANE R. LITZINGER, JENNIFER A. HERSHEY, KIRIN M. CAMBERG, and DENISE GRUBB as to Counts I through VI only, and these Defendants are dismissed with prejudice as parties to Counts I through VI only, as it appears no pleading of the relevant facts can cure the defect as to this issue in the Plaintiffs' amended complaint; and DENIED IN PART as to the argument regarding lack of causation by DEFENDANT BLAIR COUNTY CHILDREN AND YOUTH SERVICES and as to the argument regarding supplemental jurisdiction.

IT IS FURTHER ORDERED THAT the Motion to Dismiss of the FICS Defendants (Document # 22) is DENIED IN PART as to the argument of the FICS Defendants that they are not state actors, as to the argument for qualified immunity and the argument regarding a violation of the right to privacy under the Pennsylvania Constitution; and GRANTED IN PART for Count V, as to the argument of DEFENDANT FICS not being liable under a *respondeat superior* theory for the

actions of DEFENDANTS TERRY OLI-VIERI and SHELLEY HELSEL and Count V is therefore dismissed as to DE-FENDANT FICS; however, IT IS FUR-THER ORDERED THAT the Plaintiffs are GRANTED LEAVE TO AMEND their amended complaint at Count V as to the liability of DEFENDANT FICS for their claims made under 42 U.S.C. § 1983. Said amended complaint is within due twenty days from the date of this Order (Wednesday, December 8, 2004).